| **Santos v City of New York** |
|:---:|
| 2025 NY Slip Op 31859(U) |
| May 27, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 150836/2017 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. RICHARD TSAI**
*Justice*

PART 21

-----------------------------------------------------------------------------X

BETTY SANTOS,

Plaintiff,

- v -

THE CITY OF NEW YORK, NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, MTA BUS COMPANY, INC.,JOHN DOE, SPEEDWAY PLUMBING CORP., CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. and TRANSCITY W & S, LLC,

Defendants.

-----------------------------------------------------------------------------X

INDEX NO. 150836/2017

MOTION DATE 05/14/2024, 05/14/2024, 05/14/2024

MOTION SEQ. NO. 005 006 008

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 005) 126-141, 195, 222, 232-233, 239-242, 250, 253-258, 265-266

were read on this motion to/for                          JUDGMENT - SUMMARY                          .

The following e-filed documents, listed by NYSCEF document numbers (Motion 006) 196- 221, 225, 230-231, 236, 243-248, 251

were read on this motion to/for                          JUDGMENT - SUMMARY                          .

The following e-filed documents, listed by NYSCEF document numbers (Motion 008) 142-157, 224, 227, 234-235, 237-238, 249, 252, 259-264

were read on this motion to/for                          JUDGMENT - SUMMARY                          .

In this action, plaintiff Betty Santos alleges that, on August 15, 2016, she was injured when the back of bus on which she was a passenger came up into the air, causing her to fall. According to the bus operator, a steel plate covering a hole in the roadway had allegedly moved while the bus was traveling over the plate to pull into a bus stop.

Defendants New York City Transit Authority (NYCTA), Metropolitan Transportation Authority, and MTA Bus Company, Inc. (collectively, the Transit Defendants) now move for summary judgment dismissing the complaint and any cross-claims as against them (Motion Seq. No. 005). Plaintiff opposes the motion.

Plaintiff separately moves for partial summary judgment in her favor as to liability against defendants Speedway Plumbing Corp. (Speedway) and Transcity W&S, LLC (Transcity) and other relief (Seq. No. 006). Speedway and Transcity oppose plaintiff's motion.

150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK
Motion No.  005 006 008

Page 1 of 20

1 of 20

Speedway separately moves for: (1) summary judgment dismissing complaint and all cross-claims as against it and (2) summary judgment in its favor as to liability on its cross-claims against Transcity for indemnification and contribution (Seq. No. 008). Transcity and plaintiff oppose Speedway's motion.

This decision addresses all three motions.

## BACKGROUND

By affidavit, plaintiff avers that, on August 15, 2016 at approximately 6:30 a.m., she was a passenger on a New York City Transit bus M116 (Exhibit A in support of plaintiff's motion, Santos aff ¶ 2 [NYSCEF Doc. No. 168]).

### The Incident

According to plaintiff,

"As the bus was on 1165 Street between Third Avenue and Lexington Avenue, I stood up and started walking towards the front of the bus intending to exit through the front doors. All of a sudden, I heard a loud bang, and the front of the bus went down and the back of the bus was vaulted violently up. The bus then came to an abrupt and immediate stop.

As a result of the bus's sudden and violent movements as well as the abrupt stop, my body was thrown into both the horizontal and vertical poles on the bus and I landed on the chairs reserved for disabled passengers.

* * *

As a result of the accident, I sustained extensive injuries requiring surgeries to my neck, hip, elbow, right shoulder, including a cervical fusion" (*id.* ¶¶ 3-4, 7).

At his deposition, Guy Colvin testified that he has been a bus operator employed by the NYCTA for eight years (Exhibit K in support of Transit Defendants' motion, Colvin EBT, at 11, line 21 through 12, line 7 [NYSCEF Doc. No. 141]).[1]

On August 15, 2016, Colvin was operating M116 bus #6728 (*id.* at 30, lines 10-17; at 54, lines 5-7). He testified that he was pulling into bus stop at 116th and Lexington Avenue to pick up and drop off passengers (*id.* at 80, lines 6-10). Colvin heard a boom and then stopped his bus (*id.* at 81, lines 5-7). According to Colvin, two seconds elapsed from when he heard the boom until the bus came to a complete stop (*id.* at 81, lines 8-12).

---

[1] Colvin's deposition transcript was also submitted as Exhibit K in support of plaintiff's motion for summary judgment (NYSCEF Doc. No. 208), and as Exhibit L in support of Speedway's motion for summary judgment (NYSCEF Doc. No. 157).

Colvin testified that, when he exited the bus, he saw that "the passenger back wheel" of the bus was "just in front of, right in front of" a metal plate in the roadway, two inches before a hole in the roadway (*id.* at 76, lines 12-17; at 76, line 19 through 77, line 2).  When shown a photograph marked as Plaintiff's Exhibit 8 at his deposition, Colvin stated that the photograph "was how his bus looked after the accident" and "how the steel plate and hole looked after the accident" (*id.*at 112, lines 2-12):



(*see id.*, Exhibit 8). According to Colvin, the plate had moved, exposing a hole (*id.* at 105, lines 7-10).

Colvin testified that he saw smoke coming from the side of the bus, and when he looked, he saw "stuff leaking" (Colvin EBT, at 74, lines 19-23).  Colvin testified that he saw a broken pipe under the bus "that became disconnected" and was hanging from the bus (*id.* at 75, lines 3-4; at 116, lines 11-13, at 117, lines 8-20).  Post-incident photographs of the undercarriage of the bus show something resembling a pipe or cylinder that appears to be dangling:

(Continued on next page)

150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK
Motion No.  005 006 008

Page 3 of 20

3 of 20

[* 3]



(*see* Exhibit T in support of plaintiff's motion, photographs marked as Exhibit 11 [NYSCEF Doc. No. 217]).[2]

Colvin testified that he had seen the metal plate in the roadway a week before (Colvin EBT, at 86, lines 12-14). According to Colvin, he had driven in the area of the steel plate for "probably three or four days" prior to the incident, and he had about five trips each day (*id.* at 134, lines 2-11). On the morning of the incident, Colvin first saw the steel plate about a car length away as the bus approached it (*id.* at 90, lines 13-15; at 91, lines 14-21). It looked the same as it looked the week before, and also looked safe to drive over (*id.* at 92, lines 8-17). According to Colvin, "it was flat on the ground" (*id.* at 93, line 2).

Colvin testified that his initial training as a bus operator consisted of a school for "a month or two," and then refresher courses ever year (*id.* at 19, lines 12-24; at 21, lines 11-13). When asked if the refresher courses or initial training discussed steel plates, Colvin answered, "Basically, both. When you see those you slow down. You don't drive over those things regularly" (*id.* at 22, lines 23-25). He then testified as follows:

"Q. Tell me about what you were taught about a steel plate. I thought I heard you say slow down or don't drive over it?

A. When you see a steel plate you slow down, or if it's raining you go extra slow" (*id.* at 23, lines 2-8).

When asked if there was any custom or practice with regard to avoiding the steel plate altogether, Colvin answered,

---

[2] Speedway submitted black and white photographs of the undercarriage in opposition to the Transit Defendants' motion (*see* Speedway's Exhibit A in opposition [NYSCEF Doc. No. 233]).

**150836/2017 SANTOS, BETTY vs. CITY OF NEW YORK**                    **Page 4 of 20**
**Motion No. 005 006 008**

"If the plate, if there's one plate and you don't want to go over it, I mean, like, if you can't go over it, yeah, you can do that. But if there's times when the whole -- if you're on 42nd Street and the whole street is plated it's nothing you can do. You see the traffic going slow when we get to the plates.

Q. So basically, if you can avoid it you try to avoid it?

A. Right.

Q. But if not you go –

A. If there's several cars you have to go slow" (*id.* at 29, lines 2-16).

Later in his deposition, Colvin was again asked if he had been trained to avoid the plates, and he answered:

"There's no specific training on those plates. It's just videos showing you what to do and what not to do when it's raining, snow, when you see those plates.

Q. And when you see those plates in the videos do the drivers of the buses avoid the plates?

A. I can't say no. I'm just saying what I see during my daily day what's the best thing to do if you see those plates. If there's not traffic you don't want to go on top of it. But if there is peoples going over it, you see everybody going slow over the plate.

Q. But those videos that you're talking about, were the drivers of those buses, are those vehicles slowing down or were they avoiding the plates?

A. I can't say for certain – I'm pretty sure slowing down" (*id.* at 125, line 23 through 127, line 18).

Construction work in the roadway

Ramo Dischino testified on behalf of Speedway on November 4, 2021 (*see* Exhibit J in support of the Transit Defendants' motion [NYSCEF Doc. No. 140]).[3] Dischino stated that he has been a partner, an officer, at Speedway since 1997 (Dischino EBT at 14, line 23 through 15, line 7). According to Dischino, in 2016, Speedway had construction going on, new renovations, repairs, heating work— "[b]asically, any type of plumbing, we would do" (*id.* at 21, lines 9-16).

---

[3] Dischino's deposition transcript was also submitted as Exhibit P in support of plaintiff's motion (NYSCEF Doc. No. 213) and as Exhibit J in support of Speedway's motion (NYSCEF Doc. No. 155).

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**                                        **Page 5 of 20**
**Motion No.  005 006 008**

Dischino testified that, in 2016, Speedway was hired to run a new line from the City water main into the building located at 153 East 116th Street, by Jackandy, LLC (*id.* at 27, line 21 through 28, line 20; at 31, lines 12-18). According to Dischino, in 2016, Speedway exclusively used a subcontractor, Transcity Water & Sewer, for its excavation work (*id.* at 33, line 21 through 34, line 2).

Dischino testified that Speedway had a subcontractor agreement with Transcity for each different job (*id.* at 52, lines 2-9). However, the subcontractor agreements were always the same, "[b]ecause the work is always the same. He's going to excavate, he's going to shore it. I do the repair. He's going to plate it. It's always the same. There's no real detail with that" (*id.* at 55, line 23 through 56, line 3). According to Dischino, "Excavation is the digging of the hole, okay, which Benny does. Opening the street is what Benny does. The installation of the plate is what Benny does. And the repair is what Benny does, of the hole. Speedway only does the plumbing. That's all I'm licensed to do" (*id.* at 83, line 21 through 84, line 3).

According to Dischino, none of Speedway's employees were present at the jobsite at 153 E. 116th Street prior to August 15 2016, and the plumbing work by Speedway was not done until after August 15 2016 (*id.* at 96, lines 14-17; at 98, lines 18-19; at 101, lines 22-24).

Bajram (also known as Benny) Muriqi appeared for a deposition on behalf of Transcity on July 2, 2021 (*see* Exhibit L in support of plaintiff's motion [NYSCEF Doc. No. 209).[4] Muriqi testified that he and his wife, Julieta, are the owners of Transcity (*id.* at 28, lines 13-25).

Muriqi stated that Transcity is in the business of excavation and preparation for the installation of water and sewer (*id.* at 31, lines 4-5). According to Muriqi, Transcity would dig out the street using shovels, "for somebody else to come and install the water and the tap. The tap is the connection from the city main to the building" (*id.* at 40, line 16 through 41, line 4). Muriqi stated that Transcity would put in a steel plate, cover it and secure it (*id.* at 41, lines 20-21). According to Muriqi, "soon as we dig out, we take the steel plates, put it in, and cover the plate" (*id.* at 41, lines 4-6).

He testified that the procedure to secure the plate is "[t]o put spikes and cold patch, blacktop" (*id.* at 42, lines 23-25). Seven inch spikes are supposed to be banged in each corner of the plate with a sledgehammer, through the asphalt to touch the metal plate (*id.* at 43, lines 7-25). The cold patch/blacktop "goes on the edge of the steel plate and asphalt" (*id.* at 45, lines 13-14). According to Muriqi, once the plates were pinned and ramped, "buses, trucks, it's approved steel plate for traffic to go over" (*id.* at 50, lines 18-19). Other than an oversize crane, "every vehicle that drives in that street can go through that, on top of that" (*id.* at 51, lines 3-7).

---

[4] Muriqi's deposition transcript was also submitted as Exhibit K in support of Speedway's motion (NYSCEF Doc. No. 156).

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**                                    **Page 6 of 20**
**Motion No.  005 006 008**

[* 6]

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. If the moving party produces the required evidence, the burden shifts to the nonmoving party to establish the existence of material issues of fact which require a trial of the action"(*Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 175 [2019] [internal citations and quotation marks omitted]).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks omitted]).

### I.    The Transit Defendants' motion for summary judgment (Seq. No. 005)

The Transit Defendants argue that they are not liable because the bus encountered a latent defect in the roadway metal plate, which led to the metal plate shifting as the bus was proceeding over it (affirmation of Transit Defendants' counsel in support of motion ¶ 15 [NYSCEF Doc. No. 128]). Additionally, the Transit Defendants argue that the complaint should be dismissed as against the MTA because the functions of the MTA with respect to public transportation are limited to financing and planning, and specifically do not include the ownership, operation, maintenance, or control of any public access vehicles, subways, roadways, bus stops, or facilities, citing *Wenthen v Metropolitan Transportation Authority* (95 AD 2d 852) and other similar cases (*id.* ¶ 23).

In opposition, Speedway argues that summary judgment should be denied because Colvin testified at his deposition that bus drivers were told in training not to drive to over steel plates (affirmation of Speedway's counsel in opposition ¶¶ 5-7 [NYSCEF Doc. No. 232]). Speedway also contends that the dangling pipe depicted in the photographs of the undercarriage of the bus "somehow disturbed the steel plate that was properly covering this hole in the street" (*id.* ¶ 8).

In opposition, plaintiff similarly argues that Colvin was trained to avoid the plate if possible, and so there are triable issues of fact as to the Transit Defendants' liability (affirmation of plaintiff's counsel in opposition ¶ 26 [NYSCEF Doc. No. 253]).

The Transit Defendants established a prima facie case for summary judgment dismissing the complaint as against them.

First, there is no case law nor statute that requires drivers of motor vehicles to avoid roadway plates. Ongoing road work is a fact of daily life in New York City, and the requirements of street openings and excavations is governed by 34 RCNY 2-11.  34 RCNY 2-11 (e) (10) states, in relevant part:

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**                    **Page 7 of 20**
**Motion No.  005 006 008**

[* 7]

(i)     All plating and decking installed by the permittee *shall be made safe for vehicles and/or pedestrians* and shall be adequate to carry the load. Composite plates may be used provided that they comply with the AASHTO H25 or HS25 specifications.

(ii)    The size of the plate or decking must extend a minimum of 12 inches beyond the edge of the trench, be firmly placed to prevent rocking, and be sufficiently ramped, covering all edges of the steel plates to provide *smooth riding and safe condition.*

(iii)   All plating and decking shall be fastened by splicing, spiking, pinning, countersinking or otherwise protected *to prevent movement.*" (emphasis supplied).

Thus, under the Highway Rules of the City of New York, the plates must be made safe for vehicles to traverse and must be fastened to prevent movement.

Nothing in Colvin's testimony indicates that he was on notice that it was unsafe to drive over the roadway plate. According to Colvin, he had driven in the area of the steel plate for "probably three or four days" prior to the incident, and he had about five trips each day (*id.* at 134, lines 2-11). On the morning of the incident, Colvin first saw the steel plate about a car length away as the bus approached it (*id.* at 90, lines 13-15; at 91, lines 14-21). It looked the same as it looked the week before, and also looked safe to drive over (*id.* at 92, lines 8-17).

Plaintiff and Speedway fail to raise a triable issue of fact as to whether Colvin operated the bus negligently. In the court's view, they mischaracterize Colvin's testimony about the training he had received. Colvin did not testify that he was trained to avoid the plates. In any event, given this court's ruling that the common-law does not require drivers to avoid roadway plates that are required by regulation to be safe to drive over, such testimony cannot be used to hold the Transit Defendants "a higher standard of care than required by common law" (*Williams v New York City Tr. Auth.*, 108 AD3d 403, 404 [1st Dept 2013]).

Speedway's contention that a pipe had moved the roadway plate is based on the speculation of counsel. The pipe depicted in the photographs does not extend to the ground, and there is no evidence that it could have reached the roadway plate so as to dislodge it.

As the Transit Defendants point out, "[i]t is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility" (*Delacruz v Metropolitan Transp. Auth.*, 45 AD3d 482, 483 [1st Dept 2007]; *see also Archer v New York City Tr. Auth.*, 187 AD3d 564 [1st Dept 2020]). Thus, there is an additional ground warranting summary judgment dismissing the complaint as against the MTA.

[* 8]

Therefore, the Transit Defendants' motion is granted, and the complaint is severed and dismissed as against them.

Because the Transit Defendants can no longer be held liable to plaintiff, the cross-claims of the other co-defendants that sound in common-law indemnification and contribution, are dismissed by operation of law (*see e.g. Bendel v Ramsey Winch Co.*, 145 AD3d 500, 501 [1st Dept 2016] [in view of the dismissal of the complaint in its entirety as against a defendant, the cross-claims against that defendant are also dismissed]).

The Transit Defendants' own cross-claims for common-law indemnification and contribution against the other co-defendants are dismissed as academic (*Rogers v Rockefeller Group Intl.., Inc.*, 38 AD3d 747, 750 [2d Dept 2007]).

However, the dismissal of the complaint as against the Transit Defendants does not automatically result in dismissal of the cross-claims against the Transit Defendants for contractual indemnification,[5] as "the right to contractual indemnification depends upon the specific language of the contract" (*Pena v Intergate Manhattan LLC*, 234 AD3d 618, 618 [1st Dept 2025]).

## II. Speedway's motion for summary judgment (Seq. No. 008)

### A. Summary judgment dismissing the complaint and cross-claims for contribution

Speedway argues that it is entitled to summary judgment dismissing the complaint as against it because it did not perform excavation or place the steel plate; it did not have any obligation or duty to inspect or maintain the steel plate; and it did not have any notice of any alleged defect or problem with the plate (*see* Speedway's memo of law at 14 [NYSCEF Doc. No. 145]).  Speedway contends that all cross-claims for contribution must be dismissed because it is not a tortfeasor and has no duty for liability for the incident (*id.* at 19).

In opposition, Transcity asserts that Speedway employees were performing work in this excavation in the street prior to the date of the accident (affirmation of Transcity's counsel in opposition ¶ 10 [NYSCEF Doc. No. 234]).  Consequently, Transcity argues

---

[5] In the second cross-claim of its answer, Speedway alleged that the Transit Defendants "are obligated … by contract to indemnify and hold harmless [Speedway]" (*see* Transit Defendants' Exhibit E in support of motion, answer ¶ 21  [NYSCEF Doc. No. 135]).  Similarly, Transcity asserted contractual indemnification against the Transit Defendants and breach of an agreement to procure insurance (*see* Transit Defendants' Exhibit D in support of motion, answer ¶¶ 18-22; 26-28  [NYSCEF Doc. No. 134]). If no such contracts exist, Speedway and Transcity could voluntarily discontinue their cross-claims for breach of contract as against the Transit Defendants, and the case could then be transferred out of the Transit Part.

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**                        **Page 9 of 20**
**Motion No.  005 006 008**

that there are questions of fact as to whether Speedway's workers "affected this steel plate and perhaps knocked it off its base and left it in a less than secure status" (*id.*).

In opposition, plaintiff argues that Speedway had a non-delegable duty of reasonable care to drivers and passengers because excavation work is "inherently dangerous," citing *Rosenberg v Equitable Life Assur. Soc. of U.S.* (79 NY2d 663 [1992]) (affirmation of plaintiff's counsel in opposition ¶ 20 [NYSCEF Doc. No. 253]).

In reply, Speedway argues that plaintiff's opposition papers should be rejected because they are late (reply affirmation of Speedway's counsel ¶¶ 3-8 [NYSCEF Doc. No. 249). On the merits, Speedway argues that it cannot be held liable unless it had control over the work site and had actual or constructive notice of the dangerous condition, citing *Russin v Louis N. Picciano & Son* (54 NY2d 311 [1981]), and an unreported Supreme Court case.

By an interim order dated December 5, 2023 and entered December 6, 2023, the justice previously assigned to this matter allowed plaintiff's opposition to be filed, and granted Speedway additional time to reply, which obviates Speedway's argument that plaintiff's opposition was late (*see* NYSCEF Doc. No. 252).

On the merits, the court agrees with plaintiff.

> "Generally, a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts. The primary justification for this rule is that one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor. This general rule, however, is subject to various exceptions, and it has been observed that the general rule is now primarily important as a preamble to the catalog of its exceptions" (*Brothers v New York State Elec. and Gas Corp.*, 11 NY3d 251, 257-58 [2008] [internal citations and quotation marks omitted]).

One such exception is "work which is specially, peculiarly, or 'inherently dangerous'" (*id.*). In *Rosenberg v Equitable Life Assur. Socy. of U.S.*, the Court of Appeals held,

> "If an owner hires an independent contractor to excavate an area next to a thoroughfare, however, the work obviously presents inherent dangers to those who must use the thoroughfare. The employer of the independent contractor retained for such work *cannot avoid vicarious liability for the contractor's negligence because the work was performed by another*" (79 NY2d at 669 [emphasis supplied]).

*Rosenberg* remains the law. Indeed, in *Ortiz v Nunez*, the Appellate Division, First Department rejected the defendant's argument that it should not be liable for the

150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK
Motion No.  005 006 008

Page 10 of 20

[* 10]

negligence of its independent contractor, stating, "anyone undertaking work on a public highway is under a nondelegable duty to avoid creating conditions dangerous to the users of that thoroughfare" (32 AD3d 759, 760 [1st Dept 2006]).

Speedway's reliance upon *Russin v Louis N. Picciano & Son* (54 NY2d 311, *supra*) and an unreported Supreme Court case is misplaced. Those cases involved liability under Labor Law §§ 200, 240 (1) and 241.

In light of Speedway's non-delegable duty, the court need not reach Transcity's argument that Speedway workers might have knocked the plate off its base or left it unsecured.

Thus, the branch of Speedway's motion for summary judgment dismissing the complaint as against it and all cross-claims for contribution is denied.

### B. Summary judgment in Speedway's favor on its cross-claim against Transcity for contractual and common-law indemnification

Speedway argues that it is entitled to contractual indemnification from Transcity pursuant to a "Subcontractor Agreement" between Speedway and Transcity, and to common-law indemnification because Transcity, not Speedway, performed the work that allegedly caused the incident (*see* Speedway's memo of law at 17-19 [NYSCEF Doc. No. 145]).

Transcity contends that Speedway employees were performing work in this excavation in the street prior to August 15, 2016, the date of the incident (*see* affirmation of Transcity's counsel in opposition ¶ 10 [NYSCEF Doc. No. 234]). Transcity therefore argues that questions of fact exist as to whether Speedway workers affected this steel plate, and perhaps knocked it off its base and left it in a less than secure status (*id.* ¶ 10).

As discussed above, "the right to contractual indemnification depends upon the specific language of the contract" (*Pena*, 234 AD3d at 618). "[A] contractual indemnitee must 'establish that it was free from any negligence and was held liable solely by virtue of the statutory liability'" (*Travalja v 135 W. 52nd St. Owner LLC*, 232 AD3d 503, 505 [1st Dept 2024], quoting *Correia v Professional Data Mgt., Inc.*, 259 AD2d 60, 65 [1st Dept 1999]).

Here, Article 4 states:

"The work performed by the subcontractor shall be at the risk of the Subcontractor exclusively. Subcontractor hereby indemnifies and holds Contractor, its parent and affiliates and their respective officers, directors, employees and agents, harmless from and against any and all claims, actions, losses, Judgements or expenses, including reasonable attorneys fees, arising from or in any way connected with the work performed,

150836/2017  SANTOS, BETTY vs. CITY OF NEW YORK                    Page 11 of 20
Motion No.  005 006 008

11 of 20

materials furnished, or services provided to Contractor during the term of this Agreement" (Exhibit G in support of Speedway's motion [NYSCEF Doc. No. 152]).

This action falls within the terms of Article 4 as "action[ ] . . . arising from or in any way connected with the work performed [by Transcity]." Additionally, according to Dischino, none of Speedway's employees were present at the jobsite at 153 E. 116th Street prior to August 15 2016, and the plumbing work by Speedway was not done until after August 15 2016. (Dischino EBT, at 96, lines 14-17; at 98, lines 18-19; at 101, lines 22-24). Thus, Speedway has met its prima facie burden of entitlement to summary judgment in its favor against Transcity as to liability for contractual indemnification.

Speedway also demonstrated its entitlement to summary judgment in its favor against Transcity for common-law indemnification.

"in the case of common-law indemnification, the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured party by virtue of some obligation imposed by law" (*Correia*, 259 AD2d at 65 [internal citation omitted]).

As discussed above, Dischino testified that none of Speedway's employees were present at the job site until after August 16, 2016. Thus, Speedway established that that it played no role in moving the plate that Transcity installed.

Transcity failed to raise a triable issue of fact as to whether Speedway was negligent. Transcity's counsel did not cite to evidence in the record either that Speedway was performing work in the street prior to August 15, 2016, or that Speedway had moved the plate that Transcity installed.

Thus, the branch of Speedway's motion for summary judgment in its favor as to liability on its cross-claims for contractual and common-law indemnification against Transcity is granted.

### C. Summary judgment dismissing Transcity's cross-claim against Speedway for breach of an agreement to procure insurance

Speedway demonstrated its entitlement to summary judgment dismissing Transcity's cross-claim for insurance coverage as against Speedway, which was alleged in paragraphs 26 through 28 of Transcity's answer (*see* Exhibit C in support of Speedway's motion [NYSCEF Doc. No. 148]). As Speedway points out, Article 2 of the Subcontractor Agreement between Speedway and Transcity requires "the Subcontractor" (i.e., Transcity) to procure insurance, not Speedway (*see* Exhibit G in support of Speedway's motion [NYSCEF Doc. No. 152]).

Because Transcity did not oppose this branch of Speedway's motion, it failed to raise a triable issue of fact as to whether Speedway was contractually required to procure insurance for Transcity.

### III.    Plaintiff's motion (Seq. No. 006)

Plaintiff moves for: (1) summary judgment dismissing the affirmative defenses of plaintiff's culpable conduct; (2) partial summary judgment in her favor as to liability against Transcity and Speedway; and (3) leave to supplement the bill of particulars to include violations of 34 RCNY 2-11 and New York City Department of Transportation Standard Highway Specifications §1.06.44.

#### A. Summary judgment dismissing the affirmative defenses of plaintiff's culpable conduct

In their answers, the City, Speedway, and Transcity raised the affirmative defense of plaintiff's culpable conduct (*see* Exhibit D in support of plaintiff's motion, City's answer ¶ 8 [NYSCEF Doc. No. 201]; *see* Exhibit F in support of plaintiff's motion, Speedway's answer ¶ 6 [NYSCEF Doc. No. 203]; *see* Exhibit H in support of plaintiff's motion, Transcity's answer ¶ 6 [NYSCEF Doc. No. 205]).

Based on plaintiff's testimony that she was a passenger on the bus, and thus played no role in the operation of the bus, plaintiff met the prima facie burden of summary judgment dismissing the affirmative defenses of plaintiff's culpable conduct.

Speedway does not oppose this branch of plaintiff's motion. Transcity's counsel argues that an issue of fact arises as to whether plaintiff was a passenger on the bus, because the Operator's Daily Trip Sheet and the MV-104 that Colvin completed about the incident did not list plaintiff as an injured passenger on the bus (*see* Exhibit T in support of plaintiff's motion [NYSCEF Doc. No. 217]).

In reply, plaintiff submits a copy of an NYPD Aided Report, which details, "At T/P/O Aided [plaintiff Betty Santos] received injuries to right side on MTA Bus 116" (*see* Exhibit A to reply affirmation of plaintiff's counsel [NYSCEF Doc. No. 232]).

Transcity fails to raise a triable issue of fact as to whether plaintiff was a passenger on the bus. The reports did not require Colvin to list all the passengers who were present on the bus, but rather only those who had suffered injuries. Thus, at best, the lack of mention of plaintiff's name on the Operator's Daily Trip Sheet and the MV-104 might raise issues of fact as to whether plaintiff had reported injuries to Colvin, whether Colvin was aware that plaintiff had suffered any injuries, or whether plaintiff suffered any injuries at all. However, those issues are not material to the question of whether the affirmative defenses of plaintiff's culpable conduct should be dismissed.

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**            **Page 13 of 20**
**Motion No.  005 006 008**

13 of 20

Therefore, the City's affirmative defense of plaintiff's culpable conduct is dismissed. Speedway's first affirmative defense of plaintiff's culpable conduct is dismissed, and Transcity's second affirmative defense of plaintiff's culpable conduct is dismissed.

**B. Leave to supplement the bill of particulars to alleges a violation of 34 RCNY 2-11 and New York City Department of Transportation Standard Highway Specifications §1.06.44**

Plaintiff seeks leave to serve a supplemental bill of particulars alleging a violation of 34 RCNY 2-11 and the 2010 version of New York City Department of Transportation Standard Highway Specifications §1.06.44 (e) (*see* Exhibit S in support of plaintiff's motion, proposed supplemental bill of particulars [NYSCEF Doc. No. 216]).

Speedway opposes the request, arguing that plaintiff improperly seeks to supplement the Bill of Particulars to include a new theory of liability, which is prejudicial to Speedway because leave was sought after Speedway had moved for summary judgment (affirmation of Speedway's counsel in opposition at 18 [NYSCEF Doc. No. 230]). Transcity similarly opposes the request, asserting that plaintiff is "adding an entirely new theory of prosecution" (affirmation of Transcity's counsel in opposition ¶ 6 [NYSCEF Doc. No. 236]).

In reply, plaintiff argues that the violations of the NYC DOT Highway Rules § 2-11 and NYC DOT Standard Highway Specifications § 1.06.44 allege no new facts or legal theories and does not necessitate any further disclosure.

"Pursuant to CPLR 3043(b), a party in a personal injury action may serve a supplemental bill of particulars, '[p]rovided however that no new cause of action may be alleged'" (*Malerba v New York City Tr. Auth.*, 236 AD3d 596, 597 [1st Dept 2025]). Violations of statutes, ordinances, rules, and/or regulations that "merely amplify and elaborate upon facts and theories already set forth in the original bill of particulars" do not raise a new theory of liability (*id.*; *Orros v Yick Ming Yip Realty, Inc.*, 258 AD2d 387, 388 [1st Dept 1999]).

Here, the court agrees with plaintiff that the violation of 34 RCNY 2-11 (e) (10) is a reference that merely amplifies the theories already set forth in the original bill of particulars. Plaintiff's original bill of particulars states, in relevant part, that defendants were negligent in "in failing to secure roadway metal plates/covers...; failing to ensure that the roadway metal plate/cover would not move or shift," among other allegations (*see* Exhibit J in support of plaintiff's motion, bill of particulars ¶ 3 [NYSCEF Doc. No. 207]). 34 RCNY 2-11 (e) (10) is the regulation that imposed the duty to secure the plate which was allegedly violated.

However, the court disagrees with plaintiff as to NYC DOT Standard Highway Specifications § 1.06.44. The 2010 version of the New York City Department of Transportation Standard Highway Specifications §1.06.44 (e) states, in relevant part:

150836/2017  SANTOS, BETTY vs. CITY OF NEW YORK
Motion No.  005 006 008

Page 14 of 20

14 of 20

"Steel plates shall be provided over all excavations in front of driveways and excavations over which pedestrian or vehicular traffic is to be maintained. **Plates shall be of a thickness sufficient for the loads to be carried and shall have not less than two (2') feet of bearing on either side of an excavation**. Width of plates for vehicular traffic shall not be less than ten (10') feet" (*see* https://www.nyc.gov/assets/ddc/ downloads/publications/ infrastructure/ hwy_std_specs_101101_vol_1.pdf [last accessed May 11, 2025] [plaintiff's emphasis]).

The thickness of the plate and the size of the plate (i.e., that it must be large enough to have two feet bearing on either side of the excavation) are new theories of liability.  It cannot reasonably be inferred from the original bill of particulars that the thickness of the plate or its size had any bearing on the alleged failure to secure to the plate from movement.  Neither is there any allegation in the original bill of particulars that the plate collapsed under the load it was bearing.

Therefore, leave to supplement the bill of particulars is granted only as to add the allegation of a violation of 34 RCNY 2-11 (e) (10), and the supplemental bill of particulars must be served within 30 days of service upon plaintiff of a copy of this decision and order with notice of entry.

### C.  Summary judgment in plaintiff's favor as to liability against Transcity and Speedway.

#### 1.  Transcity's liability

Plaintiff argues that Transcity is negligent as a matter of law for failing to securely fasten the steel plate and make any subsequent inspections of the area (affirmation of plaintiff's counsel in support of motion ¶ 49 [NYSCEF Doc. No. 197]).

In support of her motion, plaintiff submits an affirmation from Robert Fuchs, P.E., a professional engineer (*see* Exhibit Q in support of plaintiff's motion [NYSCEF Doc. No. 214]).  Fuchs states that he has been a licensed professional engineer in New York since 2017 (*id.* ¶ 2).  Based on a description of the incident and a review of photographs, Fuchs opines, to a reasonable degree of engineering certainty, that:

"as the bus drove over the steel plate within the roadway, the plate displaced and shifted towards the west under the bus, thereby exposing the underlying excavation. The sudden displacement of the steel plate under the normal vehicular traffic loads imposed by the bus indicates that the plate was not adequately secured to the roadway pavement in accordance with generally good and accepted street work practices or applicable New York City Department of Transportation (DOT) regulations" (*id.* ¶ 13).

According to Fuchs, there was a violation of 34 RCNY § 2-11 (e) (10) (*id.* ¶ 16).[6]

Fuchs further states,

"The evidence in this case demonstrates that the steel plate was not adequately secured to the roadway pavement whereby it was either not embedded deep enough in the asphalt pavement, not adequately pinned or spiked down, and/or was not installed with sufficient bearing around the sides of the excavation. Had the plate been adequately installed, it would not have displaced and dislodged under the bus. The failure to adequately install and secure the plate to the roadway pavement is a defect that was a proximate cause for the incident" (*id.* ¶ 18).

He asserts, "the displaced condition of the plate shown on the photographs demonstrates that the plate was not properly pinned, spiked, or otherwise installed in accordance with §2-11 of the New York City DOT Highway Rules" (*id.* ¶ 19).

In opposition, Transcity argues that plaintiff failed to prove the elements for summary judgment, in that there is evidence to contradict plaintiff's affidavit that she was a passenger on the bus (*see* affirmation of Transcity's counsel in opposition to plaintiff's motion ¶ 4 [NYSCEF Doc. No. 236]).

"'A plaintiff in a negligence action moving for summary judgment on the issue of liability must establish, prima facie, that the defendant breached a duty owed to the plaintiff and that the defendant's negligence was a proximate cause of the alleged injuries'" (*Tkachuk v D & J Realty of New York, LLC*, 234 AD3d 1009 [2d Dept 2025] [citation omitted]).

Here, plaintiff established that Transcity owed a duty to plaintiff under 34 RCNY 2-11 (e) (10). Dischino testified at his deposition that, in 2016, Speedway was hired to run a new line from the City water main into the building located at 153 East 116th Street, by Jackandy, LLC (Dischino EBT, at 27, line 21 through 28, line 20; at 31, lines 12-18). According to Dischino, in 2016, Speedway exclusively used Transcity for its excavation work (*id.* at 33, line 21 through 34, line 2). Muriqi testified at his deposition that Transcity would put in a steel plate, cover it and secure it (Muriqi EBT, at 41, lines 20-21).

The violation of 34 RCNY 2-11 (e) (10)—i.e., that the plate was not adequately fastened by splicing, spiking, pinning, countersinking or otherwise protected to prevent movement—is based on circumstantial evidence that the plate shifted when the bus traveled over the plate

---

[6] Fuchs also opined that New York City Department of Transportation Standard Highway Specifications §1.06.44 (e) (2010) was violated (Fuchs affirm ¶ 17), but the court does not discuss this violation because leave to amend the bill of particulars to allege this violation was denied.

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**            **Page 16 of 20**
**Motion No.  005 006 008**

"To establish a prima facie case of negligence based wholly on circumstantial evidence, '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred'" (*Schneider v Kings Highway Hosp. Ctr., Inc.*, 67 NY2d 743, 744 [1986] [citation omitted]; *see also Chavez v Prana Holding Co. LLC*, 200 AD3d 449 [1st Dept 2021]). "A plaintiff need only prove that it was more likely or more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency" (*Tkachuk*, 234 AD3d at 1010, quoting *Gayle v City of New York,* 92 NY2d 936, 937 [1998]).

The court agrees with plaintiff that the circumstantial evidence presented in the record met plaintiff's prima facie burden of establishing a violation of 34 RCNY 2-11 (e) (10) (iii) as a matter of law. Based on plaintiff's affidavit that her body was thrown into the poles on the bus and that she sustained injuries, plaintiff established that the violation of 34 RCNY 2-11 (e) (10) was a substantial factor in causing injury to plaintiff.

However, a violation of the Rules of the City of New York would constitute only some evidence of negligence (*Cruz v City of New York*, 13 AD3d 254, 254 [1st Dept 2004]). Therefore, the branch of plaintiff's motion for partial summary judgment in her favor as to liability against Transcity must be denied (*see Baez v 1749 Grand Concourse LLC*, 178 AD3d 520, 521 [1st Dept 2019] ["Plaintiff's motion and the Building Defendants' motion were correctly denied. None of the statutory provisions relied upon by plaintiff constitutes proper bases for a finding of negligence per se"]).

In light of the court's denial of this branch of plaintiff's motion for summary, the court need not reach Transcity's argument that summary judgment should be denied because there is an issue of fact as to whether plaintiff was a passenger on the bus. However, the court notes that this argument was rejected in the context of the branch of plaintiff's motion for summary judgment dismissing the affirmative defense of the plaintiff's culpable conduct (*see* Section III.A of this decision, *supra*).

Notwithstanding the denial of this branch of plaintiff's motion for summary judgment, to "salvag[e] something of value from a motion for full or partial summary judgment that must otherwise be denied" (*Phillip v D & D Carting Co., Inc.*, 136 AD3d 18, 25 [2d Dept 2015] [citation and internal quotation marks omitted]), the court exercises its discretion, pursuant to CPLR 3212 (g), to deem the following facts as established for all purposes:

(1) Transcity violated 34 RCNY 2-11 (e) (10) (iii); and
(2) The violation was a substantial factor in causing injury to plaintiff

### 2. Speedway's liability

Plaintiff argues that summary judgment as to liability should be granted against Speedway because it is liable for the actions of Transcity, in that Speedway had a non-

**150836/2017 SANTOS, BETTY vs. CITY OF NEW YORK**
**Motion No. 005 006 008**

Page 17 of 20

17 of 20

[* 17]

delegable duty due to the inherent dangers associated with construction over a busy New York City street (affirmation of plaintiff's counsel in support of motion ¶¶ 56-60).

In opposition, Speedway argues that the evidence unequivocally establishes that Speedway did not install, inspect or maintain the steel plate at issue, and did not have any duty to do so (affirmation of Speedway's counsel in opposition, at 2 [NYSCEF Doc. No. 230]). Speedway maintains that did not have actual or constructive notice of any alleged defect in the street, and that absent the requisite element of notice, Speedway cannot be held liable as a matter of law (*id.* at 15-17)

Because Speedway hired a contractor to perform excavation on a public highway, and excavation is an inherently dangerous activity as a matter of law, Speedway is vicariously liable for Transcity's failure to comply with 34 RCNY 2-11 (e) (10) (*Rosenberg*, 79 NY2d 663; *Ortiz*, 32 AD3d at 760).

However, as discussed above, a violation of 34 RCNY 2-11 (e) (10) is only some evidence of negligence. Therefore, plaintiff is entitled to conditional summary judgment in its favor as to liability against Speedway. That is, if plaintiff establishes Transcity's negligence at trial, then Speedway will be liable for Transcity's negligence as a matter of law.

## CONCLUSION & ORDER

Accordingly, it is hereby

**ORDERED** that the motion for summary judgment dismissing the complaint by defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. (Seq. No. 005) is **GRANTED**, and the complaint is severed and dismissed as against these defendants, with costs and disbursements to these defendants against plaintiff as taxed by the Clerk, upon submission on an appropriate bill of costs; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. accordingly; and it is further

**ORDERED** that the cross-claims by defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. that sound in common-law indemnification and contribution are dismissed; and it is further

**ORDERED** that the cross-claims of defendants City of New York and Consolidated Edison Company of New York, Inc. against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. are dismissed; and it is further

150836/2017  SANTOS, BETTY vs. CITY OF NEW YORK
Motion No.  005 006 008

Page 18 of 20

**ORDERED** that the first cross-clam of defendant Speedway Plumbing Corp. is dismissed as against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc.; and it is further

**ORDERED** that the first and third cross-clams of defendant Transcity W&S LLC is dismissed as against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc.; and it is further

**ORDERED** that plaintiff's motion (Seq. No. 006) is **GRANTED IN PART** as follows**:**

(1) the branch of plaintiff's motion for summary judgment dismissing the affirmative defenses of plaintiff's culpable conduct is **GRANTED**, and the City's affirmative defense of plaintiff's culpable conduct is dismissed; the first affirmative defense of plaintiff's culpable conduct in the answer of defendant Transcity W&S LLC is dismissed, and the second affirmative defense of plaintiff's culpable conduct in the answer of defendant Speedway Plumbing Corp. is dismissed.

(2) the branch of plaintiff's motion for summary judgment in her favor as to liability against defendants Speedway Plumbing Corp. and Transcity W&S LLC is **GRANTED IN PART TO THE EXTENT THAT** plaintiff is granted conditional summary judgment in her favor as to liability against defendant Speedway Plumbing Corp., and the remainder of that branch is denied.

(3) the branch of plaintiff's motion for leave to supplement the bill of particulars is **GRANTED IN PART TO THE EXTENT** that leave is granted only as to the allegation of a violation of 34 RCNY 2-11 (e) (10), and the supplemental bill of particulars must be served within 30 days of service upon plaintiff of a copy of this decision and order with notice of entry; and it is further

**ORDERED** that the remainder of plaintiff's motion is otherwise denied; and it is further

**ORDERED** that, pursuant to CPLR 3212 (g), the following facts are deemed as established for all purposes:

(1) Defendant Transcity W&S LLC violated 34 RCNY 2-11 (e) (10) (iii); and
(2) the violation was a substantial factor in causing injury to plaintiff; and it is further

**ORDERED** that the motion for summary judgment by defendant Speedway Plumbing Corp. (Seq. No. 008) is **GRANTED IN PART** as follows:

(1) the branch of Speedway Plumbing Corp.'s motion for summary judgment in its favor on its cross-claims against defendant Transcity W&S LLC for

**150836/2017   SANTOS, BETTY vs. CITY OF NEW YORK**
Motion No.  005 006 008

**Page 19 of 20**

[* 19]

19 of 20

contractual indemnification is **GRANTED** as to liability, and the amount of damages shall be determined at trial;

(2) the branch of Speedway Plumbing Corp.'s motion for summary judgment dismissing the cross-claim of defendant Transcity W&S LLC for insurance coverage is **GRANTED**, and that cross-claim is dismissed as against defendant Speedway Plumbing Corp.; and it is further

**ORDERED** that the remainder of Speedway Plumbing Corp.'s motion for summary judgment is otherwise denied; and it is further

**ORDERED** that the remainder of the action shall continue.

20250527131926RTSAI467D95FA64C24EB986B89BA7A4641F25

| **5/27/2025** | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD TSAI, J.S.C.** | |

| | | | | | |
|---|---|---|---|---|---|
| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| **MOTION SEQ. NO. 005** | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| **MOTION SEQ. NO. 006** | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| **MOTION SEQ. NO. 008** | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |